## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ROBERT MARTINEZ,**

    **Plaintiff,**

**v.**                                                                   **No. 14-cv-0016 SMV/KBM**

**CITY OF SANTA FE and**
**ST. PAUL FIRE AND MARINE INS. CO.,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND

THIS MATTER is before the Court on Plaintiff's Motion to Remand to State Court [Doc. 11] and supporting memorandum [Doc. 12], filed on February 21, 2014 (collectively "Motion"). Defendant St. Paul Fire Marine and Insurance Company ("St. Paul")[1] filed a response [Doc. 18] on March 7, 2014. Plaintiff filed his reply [Doc. 19] on March 21, 2014. All parties have consented to proceed before the undersigned. [Doc. 17]. The Court, having considered the briefing and relevant law, and being fully advised in the premises, finds that Plaintiff's Motion is not well-taken and shall be **DENIED.**

### BACKGROUND

Plaintiff Robert Martinez alleges that while on duty as a police officer for Defendant City of Santa Fe ("City"), he was injured in a motor vehicle collision on February 14, 2010, when a drunk driver crashed into the police cruiser he was driving. [Doc. 1-2] at 2–3. Plaintiff reports that he suffered disabling injuries, is still unable to work, and that his lost earnings alone exceed $1.2 million. *Id.* at 3–4.

---

[1] The parties alternatively refer to Defendant as "St. Paul" and "Travelers." [Doc. 1] at 1; [Doc. 1-2] at 1.

Plaintiff and Defendant City settled Plaintiff's workers' compensation claims, and the Workers' Compensation Administration ("WCA") approved the lump sum settlement. [Doc. 1-2] at 31–34.   Plaintiff was also able to recover $100,000 from the other driver's automobile insurance company and an additional $100,000 from his own insurance company under his uninsured/underinsured motorist ("UM/UIM") coverage.   *Id.* at 3–4.   However, Defendant St. Paul—the insurance company that provided the automobile policy to the Defendant City for the police cruiser—has denied Plaintiff's claims because it contends that the City's policy had no UM/UIM coverage.   *Id.* at 2, 4–5.   Plaintiff, however, contends that the City's policy for the police cruiser *did* include UM/UIM coverage equal to the policy limit, which Plaintiff believes to be at least $1 million.[2]   *Id.* at 5.

On November 7, 2013, Plaintiff brought suit in state court against the City and St. Paul, seeking payment under the City's insurance policy with St. Paul.   *Id.* at 1.   In the Complaint, Plaintiff's dispute with St. Paul is readily identifiable.   However, his dispute with the City is much harder to discern.   He alleges only two counts involving the City.   Count 1 seeks a declaratory judgment that the City's automobile insurance policy for the police cruiser *did* include UM/UIM coverage.   *Id.* at 6.   Count 8 seeks a declaratory judgment that the WCA order, which approved the lump sum workers' compensation settlement between Plaintiff and Defendant City, relieves Plaintiff of any duty to reimburse the City out of any UM/UIM benefits that might be paid to him under City's policy with St. Paul.   *Id.* at 11–12.   The remaining counts

---

[2]   Specifically, Plaintiff argues that the written form, by which the City attempted to reject UM/UIM coverage, failed to comply with New Mexico law.   [Doc. 12] at 5–6 (citing *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 21, 245 P.3d 1214).   Accordingly, Plaintiff contends that the policy covering the police cruiser should be reformed to provide UM/UIM coverage equal to the liability limits.   *Id.*; *see also Jordan*, 2010-NMSC-051, ¶ 22.

are only alleged against St. Paul and relate to the payment of benefits under the policy as well as claims for punitive damages and attorney fees.  *See generally id.*

Alleging diversity jurisdiction, St. Paul removed the case from state court on January 6, 2014, and argued that Plaintiff had fraudulently joined the City.  [Doc. 1] at 1–2; 4–11.  On February 7, 2014, the Court ordered Plaintiff to respond to the fraudulent joinder argument. [Doc. 10].   In response, he filed the instant motion to remand arguing that he is seeking declaratory judgment regarding the City's insurance policy and that the City is an indispensible party because its interests would be affected by any reformation of the policy.  [Doc. 12] at 7–8. St. Paul responds that the City is not a necessary party because any benefits under the policy would be paid solely by St. Paul and that a declaratory judgment would have no effect on the City's rights or duties to Plaintiff.  [Doc. 18] at 3–9.  In the alternative, St. Paul argues that the Court should realign the parties and deem the City an involuntary plaintiff for diversity purposes. *Id.* at 10.  Plaintiff's reply presents no argument regarding realignment.  *See generally* [Doc. 19]. Rather, Plaintiff replies that the City is a proper party because Article IX, Section 14 of the New Mexico Constitution and NMSA 1978, § 52-5-17(C) require the City to seek reimbursement from him for workers' compensation payments if he succeeds in his claims against St. Paul. [Doc. 19] at 7–8.  All parties agree that Plaintiff and the City are citizens of New Mexico and that St. Paul is a foreign corporation with Connecticut citizenship.  *See* [Doc. 1] at 3; [Doc. 1-2] at 1.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013).   Where an action is between citizens of different states and where the

amount in controversy exceeds $75,000, federal courts are empowered to hear the case. 28 U.S.C. § 1332. However, when a named defendant is a citizen of the same state as the plaintiff, federal courts must remand the case unless that defendant has been fraudulently joined or diversity jurisdiction exists after realignment of the parties. *See* 28 U.S.C. § 1447 (requiring remand where subject-matter jurisdiction is lacking); *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 70 (1941) (discussing "alignment of the parties for purposes of determining diversity of citizenship").

<u>Fraudulent Joinder</u>

"[U]pon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Smoot v. Chicago, Rock Island & Pac. R.R. Co.,* 378 F.2d 879, 881–82 (10th Cir. 1967). A district court is required to disregard nominal or formal parties and rest jurisdiction only upon the citizenship of the real parties to the controversy. *See Lenon v. St. Paul Mercury Ins. Co.,* 136 F.3d 1365, 1369 (10th Cir.1998) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).

However, the "heavy burden" to prove fraudulent joinder rests on the removing party, and "all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988. To establish fraudulent joinder, "the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* An otherwise colorable claim can be considered meritless and disregarded for diversity purposes if brought in the absence of jurisdiction. *Brazell v. Waite*, 525 F. App'x 878, 882 (10th Cir. June 4, 2013) (unpublished).

4

<u>Realignment of Parties</u>

Courts in diversity actions have a duty to scrutinize the interests of the parties to determine if their positions in the litigation conform to their real interests. *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1387 (10th Cir. 1978). The parties' characterization in the pleadings of their interests is not definitive. *City of Indianapolis*, 314 U.S. at 69–70; *Symes v. Harris*, 472 F.3d 754, 761 (10th Cir. 2006). Realignment is proper if the Court determines that no actual, substantial controversy exists between the relevant parties. *Price v. Wolford*, 608 F.3d 698, 705 (10th Cir. 2010) (reaffirming that the Tenth Circuit applies a substantial-conflict test, rather than a primary-purpose test). Realignment can be used by courts to either destroy or preserve diversity jurisdiction. *See City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1314–15 (11th Cir. 2012).

## ANALYSIS

The Court finds that St. Paul fails to meet its burden to demonstrate that the City was fraudulently joined in Plaintiff's declaratory action. However, the Court also finds that Plaintiff lacks any actual or substantial conflict with the City. After realigning the parties to reflect their actual interests, the Court finds that diversity jurisdiction exists and determines that Plaintiff's Motion will be denied.

<u>St. Paul fails to demonstrate that the City was fraudulently joined.</u>

Count 1 of the complaint seeks a declaratory judgment that the policy between St. Paul and the City includes underinsured motorist coverage. Under New Mexico law, "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." NMSA

1978, § 44-6-12.  New Mexico courts have interpreted this provision to require that "any person or entity with an existing or potential interest in the outcome of the action" must be named. *Gallegos v. Nev. Gen. Ins. Co.*, 2011-NMCA-004, ¶ 9, 149 N.M. 364, 366.  Furthermore, "failure to do so deprives the [state] court of subject matter jurisdiction."  *Id.*

Citing to a variety of cases outside New Mexico, St. Paul argues that the City is not a proper or necessary party to this suit.  *See* [Doc. 18] at 7; [Doc. 1] at 8.  The Court is not persuaded.  New Mexico courts have previously held that a named insured is indispensable in any declaratory judgment action between the insurer, named insured, and an injured third party. *See Home Fire & Marine Ins. Co. v. Schultz,* 1969-NMSC-113, ¶ 6, 80 N.M. 517, 519; *see also Gallegos*, 2011-NMCA-004, ¶¶ 11–12 (extending *Schultz* to hold that—in addition to the named insured—any known third-party claimants are required parties in a declaratory judgment action instituted by the insurer to deny coverage).  While these cases differ slightly from the instant case because they involve declaratory actions instituted by the insurer, St. Paul bears the heavy burden of proving that Plaintiff will be unable to establish a cause of action against the City in state court.  *See Dutcher*, 733 F.3d at 988.  St. Paul has made no effort to distinguish these cases indicating that the City is a required party.  Resolving all legal ambiguities in favor of the plaintiff, *see id.*, the Court finds that St. Paul has not met its burden to demonstrate that Plaintiff could not state a claim against the City in a state court declaratory action to determine coverage.

<u>There is no substantial controversy between Plaintiff and the City.</u>

St. Paul requests that the parties be realigned if the Court finds that the City was not fraudulently joined.  St. Paul argues that the primary purpose of the suit is to expand coverage available to both the City and Plaintiff, and since both would benefit from any such expansion,

their interests are aligned.  [Doc. 18] at 10–11.  Plaintiff makes no reply to St. Paul's argument for realignment.  *See generally* [Doc. 19].  Rather, he argues that he has a valid claim against the City because it is required by the New Mexico Constitution and NMSA 1978, § 52-5-17(C) to seek reimbursement of workers' compensation payments.  *Id.* at 4–7.  He further argues that although he believes the WCA's order approving the lump sum settlement bars the City from seeking reimbursement, that order contains a material ambiguity making a declaratory action appropriate.  *Id.* at 8.  To the extent that Plaintiff argues that he has an adversarial position with the City because it might seek reimbursement, the Court is not convinced that there is an actual or substantial controversy on this issue.

First, the City agrees with Plaintiff that it has already waived any right to seek reimbursement under the policy.  [Doc. 1-4] at 2 ("The City agrees to such waiver and agrees that such waiver applies to any recovery Mr. Martinez might obtain from the underinsured motorist coverage . . . .").  Accordingly, there is no dispute to be resolved between Plaintiff and the City regarding the reimbursement of workers' compensation benefits, and therefore, he may not seek a declaratory judgment against the City on this ground.  *See City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 16, 124 N.M. 640, 645 (stating that a declaratory judgment action shall be dismissed as moot if no actual controversy exists between the parties).

Second, the Court finds no ambiguity in the WCA order questioned by Plaintiff.  The provision challenged by Plaintiff provides that:

> Employer is entitled to credit in the amount of $10,000.00, which consideration shall satisfy and extinguish Employer's claim for reimbursement pursuant to § 52-5-17 NMSA (1990) for all past, present and future indemnity or medical benefits paid or payable to or on behalf of Worker as a result of his accidental work injury from Worker's third party tort recovery.

7

[Doc. 1-2] at 32.  Plaintiff argues that "third party tort recovery" is ambiguous because it might allow the City to recover under its insurance policy with St. Paul.  The Court disagrees.  The plain reading of that provision provides that any claim for reimbursement made pursuant to § 52-5-17 is extinguished, and the City agrees.  *See* [Doc. 1-4] at 2.  Again, no controversy exists between Plaintiff and the City on this issue.

Third, even if the City did not agree with Plaintiff on this issue and even if there were an ambiguity in the WCA's order, Plaintiff's claim for declaratory judgment would still be barred.  Notwithstanding the creative arguments made by Plaintiff about how the New Mexico Constitution obligates the City to seek reimbursement for workers' compensation payments, courts lack jurisdiction to issue declaratory judgments regarding WCA orders approving lump sum settlements.  *See Cruz v. Liberty Mut. Ins. Co.*, 1995-NMSC-006, ¶ 18, 119 N.M. 301, 305.

Under New Mexico law, the WCA retains continuing and exclusive jurisdiction over "both modification and enforcement of lump-sum settlement agreements."  *Id.* ¶ 17–18.  Only the WCA has jurisdiction to "terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits provided by the Workers' Compensation Act."  NMSA 1978, § 52-5-9.  Proceedings in state district court are limited solely to enforcement of a supplementary order by the WCA declaring an employer in default on payments.  *Cruz*, 1995-NMSC-006, ¶ 16.  Accordingly, a declaratory judgment action is neither contemplated nor available under the Workers' Compensation Act.  Therefore, Plaintiff's claim regarding reimbursement is meritless and may be ignored for the purposes of determining diversity jurisdiction.  *See Brazell*, 525 F. App'x at 882.

Additionally, the Court finds that the interests of Plaintiff and the City are aligned regarding the remaining count naming the City.  In that count, Plaintiff seeks a declaration that the City's policy includes underinsured motorist coverage.  *See* [Doc. 1-2] at 6.  He does not seek to recover anything from the City, nor does he request the Court to find that the City owes him any obligation.  Furthermore, Plaintiff recognizes that the City shares an interest in receiving additional coverage under the policy.  *See* [Doc. 12] at 7–8 (describing the City's possible subrogation interest in other suits and arguing that "Defendant City would be directly benefitted by a ruling expanding its rights under the contract").  Accordingly, the real interest of the parties on that count is aligned and there is no substantial conflict between them.

Based on the preceding findings, the City shall be realigned as a plaintiff in this case.

<u>The Court has diversity jurisdiction.</u>

Diversity jurisdiction normally has two prerequisites: the complete diversity of the parties and the jurisdictional amount in controversy.  *See* 28 U.S.C. § 1332(a).  Diversity requires that no plaintiff share a state citizenship with any defendant.  *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806); *City of Indianapolis*, 314 U.S. at 69.  In this case, after realignment of the parties, that requirement is met because neither Plaintiff nor the City shares citizenship with St. Paul.  Additionally, the jurisdictional amount requirement is met because Plaintiff has alleged more than $75,000 in damages.  *Compare* 28 U.S.C. § 1332(a) (requiring the amount in controversy to be greater than $75,000), *with* [Doc. 1-2] at 4 ("Plaintiff's past and future economic damages from lost earnings alone exceed $1.2 million."), & at 5, 9 (alleging policy coverage in the amount of $1 million or greater and demanding payment of benefits).  Accordingly, this Court has diversity jurisdiction.  Plaintiff's Motion shall be denied.

## CONCLUSION

The Court determines that St. Paul has not proved that the City was fraudulently joined. However, the Court finds that no substantial or actual conflict exists between Plaintiff and the City.  Upon realignment of the parties, the Court determines that diversity jurisdiction exists and denies Plaintiff's motion to remand.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Remand to State Court [Doc. 11] is **DENIED.**

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**